I think Turning to the first issue, the record in this case is not very long. This case was filed in April of 2017 and a default judgment was entered on May of 2018, about a year later. Now, the plaintiff made a comment in his brief that the defendant had a lot of time to do things and he did it. And objectively, that's a true statement, but there's a reason for that. And I just noticed this as I was preparing for arguments today. If you look at the record at page C-128, shortly after this case was filed, the defendant was actually making payments to the plaintiff and they were accepting it. The payments were $1,400 or $1,410. I can't tell if the defendant was ever even given a credit for those payments because that brings up another unusual thing about this record. There's no affidavit of amounts due knowing as required by Supreme Court Rule 113. I'm not sure how a judgment foreclosure was entered in the first place without a proof of affidavit, but there was no proof of affidavit. But I'd like to start my discussion with the points that I think the parties can agree upon. The first thing I'd like to start with that is after the default judgment was entered in May, in October, on October 19th of 2018, a trial modification was sent to the defendant. He made those payments. And that trial modification expired on February 2019. And after that, that's sort of where the dispute arose. The defendant argued that he continued to make payments to the plaintiff after the trial period expired, and he believed he had a loan modification. Plaintiff, however, argues in his reply brief that the defendant failed to return a final signed copy of the modification agreement. And that's why the modification fell apart. But if we look at this record, I think I have a lot more questions than I have answers. For instance, why was the judgment foreclosure entry without an affidavit? Why was the defendant making payments to the plaintiff after a foreclosure case was filed? And why was the plaintiff accepting them? I'm sure Justice Reyes recalls from his days presiding over a very busy mortgage foreclosure calendar that ordinarily when a foreclosure case gets filed, a borrower doesn't just make payments. He's either paying off the loan, reinstating it by fully paying the amount that's due plus attorney fees and court costs, or there's a loan modification. But if we take what the plaintiff said is true, that the defendant never returned a final signed copy of the loan modification agreement, one thing we don't see in this record, and I'm shocked, frankly, is why wasn't there a notice and an opportunity to cure? Clearly, Mr. Cortez was making payments. I would have expected to see a notice saying, Mr. Cortez, we're receiving your payments, but we don't have the final signed modification. Please send it to us. And another question is, why was the modification allegedly sent to the defendant? Because at the time, he had an attorney. So that modification, if it was sent out, should have gone to his attorney and not to him. We don't have any proof that that modification was ever sent. And the final question we have is, why didn't the defendant get credit for those payments that he made from December of 2018 through April of 2019? All of these questions remained unanswered below. Now, I'm not going to sit here and pretend that contesting a judicial sale is not a difficult thing to do. It absolutely is. Our Supreme Court's decision in McCluskey, however, tells us that a trial court is correct in refusing to approve a judicial sale, where a lender's conduct prevented a borrower from protecting their interest in the property. And I think this is a really good example of that. The borrower was making payments. He was led to believe that he did have a loan modification. He was performing, and quite frankly, I think that's the best defense that a mortgage borrower can have in a foreclosure case. I have a loan modification. I'm making payments to a lender, and the lender is accepting them. I think the mere fact that there was payments being made and payments being accepted, that's, to me, a strong reason that something's up, and it should have warranted an evidentiary hearing. Now, if we look at some of the cases, there is case law that helps us. I think our best case, perhaps, is City Mortgage versus Lewis. That's a decision from this court. And in that case, one letter from the plaintiff, from the lender, was enough to raise a serious issue about whether the defendant was even being reviewed for a loan modification, not whether he had a modification or whether he was making payments. And in that case, this court vacated the order approving sale, remanded the case for an evidentiary hearing, and that's exactly what we're asking for today. Now, the plaintiff's response relies heavily on another decision of this court, which is the City Mortgage versus Bermudez decision. Bermudez is factually distinguishable from this case, even though at first blush, it appears to be on all fours. The difference in facts are, in Bermudez, the defendants were formally denied for a loan modification, and the formal denial took place eight months before the judicial sale. Here, we don't have a formal denial for a loan modification, nor do we have a denial coming eight months before the judicial sale. Now, another point that I would just like to touch on is the parties in their briefs discussed who had better evidence. We think our evidence was slightly better, and the plaintiff says, you know, nothing should have been considered. And I understand that argument, but I don't think we even need to get to that point. If there's a serious issue, and the court can see the serious issue, and I think the defendant, even though his evidence wasn't stellar, did enough to present a serious issue that warranted an evidentiary hearing. That chance was never given to the defendant. So, we think based, even on this limited record, the lender's conduct here in offering a modification and accepting payments was enough to warrant an evidentiary hearing. So, that's what we're asking for today. The second issue is very straightforward. It's appropriate credit to the defendant. This is an unusual case because there was a surplus. You know, if you look after the default was entered, I don't think there's a serious dispute that the defendant made payments, and he never received the credit for those payments. So, we're asking for the court to adjust. And we have the number cited in our brief. It's not a very difficult calculation. If the court doesn't agree with the first argument, to adjust the order approving sale, to provide the defendant with credit. Because if we don't, he's out of options. Right now, as we sit here today, Section 1509C of the Foreclosure Law has come into effect. That has barred any claim that the defendant has. He can't just go and file a lawsuit for the money that frankly, he never received the credit for. Now, I know the plaintiff makes an argument about a waiver. I don't think the defendant waived the argument, but I certainly can understand the argument. Candidly, the defendant never said, I made these payments post-judgment, and I was never given a credit for them. However, he did argue that he was performing under a loan modification. He did attach copies of those payments to his response. And the payments did identify the dates and times, and they were clearly after the judgment of foreclosure was entered. Now, to the extent the court disagrees, in our reply brief, we've cited a harsh mandate or the harsh waiver doctrine, if the interest of justice required consideration of the issue. And we believe that this would be one of those instances. And also, in preparing today for argument, I almost thought of the Plain Error Doctrine too, as another way we can get to the right result. Because under the Plain Error Doctrine, if there's an egregious error that impaired the integrity of the judicial process itself, I think if we can correct the error, and we do correct the error, I believe, because none of us are perfect. I mean, that reinstills faith in the judicial process. Now, here, I think we do have a clear error. And at the very least, we're asking this court to correct that error. So for all of the reasons that I discussed today, as well as for the reasons cited in our brief, we're asking two things, to vacate the order approving sale and remand the case for an evidentiary hearing, or to correct the surplus to provide for a proper credit. Thank you, Your Honors. Does anyone have any questions? Yes. Counsel, so in Lewis, there was a question whether or not there was a loan modification agreement. And that's why the letter was pertinent. Here, it doesn't appear that either the sides plaintiff or defendant is contesting that there was a final loan modification agreement that was agreed to between the creditor and the lender. Did the defendant ever return a signed final loan modification agreement? And if so, why wasn't that document attached to his response when they were contesting the order approving sale? Your Honor, just so I'm very upfront and clear with the court, I did represent him below, but none of this is in the record, but he never received the final loan modification. That's why he never returned it. And he had been communicating almost weekly with the lender via email. So he said to me when we were preparing for today, they could have just emailed it to me. I would have signed it and sent it right back to them. But again, none of that's in the record. And I understand if counsel's going to yell at me for that. So the fact that he had not received the final loan modification agreement, that's in the record that was argued before the trial? No, it was not. All right. Okay. And then why didn't counsel ask for evidentiary hearing? I'm not sure, Your Honor, to be honest with you. Like I said, I didn't do that part in the trial court. I didn't do any part in the trial court. So I'm not sure. I think he thought that his response was enough to deny confirmation because there was a serious issue. But again, that's just speculation on my part. Okay. All right. And then that takes me to the next question in terms of the surplus. That wasn't raised before the trial judge either. Absolutely. And I agree, Your Honor. He never specifically said, I made these payments. I was never given a credit. Our argument is sort of that it was implied. And our fallback argument is it would be the right thing. And I think if he didn't get credit, we all agree it would be the right thing to properly credit him the payments that he made. Because he's out of options. If he could go and sue the plaintiff and collect the money elsewhere, I could understand why the court would say, no, absolutely not. But in this case, he can't. 1509C of the foreclosure law is there, and he's barred from bringing any money. Okay. Sorry. All right. Thank you. Any other questions? Okay. Let's hear the response. Good morning, Your Honors. May it please the court. Ryan Sore on behalf of the Appley Deutsche Bank National Trust Company as trustee. Your Honors, we obviously are requesting that this court affirm the lower courts. This is a case where Mr. Fortes had opportunities to do things, and he didn't do it. The foreclosure was filed, and the plaintiff proceeded all the way to judgment, and he didn't appear. Judgment was entered. A sale was set. And at that point, he did actually hire an attorney and filed a motion to stay the sale. And in that motion, he indicated that he didn't think he was in default, and that he was making payments. But he didn't move to vacate the judgment. He didn't move to protect any of what rights he may have had. He just asked to stay the sale. He also, at that time, around that time, filed a pro se motion to stay sale. I think it was the latter one that was granted. The sale was stayed. And then Mr. Fortes, once again, didn't do anything for several months. In that time, he alleges that he received a trial period modification plan offer from the trustee servicer, and that he made payments in December 2018, January through April 2019. And then he alleges he made a final payment in May 2019 that was returned. In May 2019, the trustee noticed the sale. Noticed the sale was appropriately sent under 1507 to Mr. Cortez's attorneys of record, the office of Farentino, and also to the property address, address of the unknown owners and non-record claimants. Mr. Cortez did nothing. He didn't move to stay the sale, saying I've been making payments under a loan modification agreement. He didn't move to vacate the judgment, saying I'm not in the fault. I should have received a loan modification agreement. He did nothing. On June 11, 2019, the property sold in a judicial sale. One day later, Mr. Cortez filed a pro se motion to vacate, alleging that he didn't receive notice of sale. Ultimately, that motion was stricken by the trial judge because Mr. Cortez filed a pro se in the trial court that should have come from his attorneys of record. And then after that date, almost a month after the sale, the trustee finally moved to confirm the sale. It wasn't until that point when Section 1508B would have applied to any motion brought by Mr. Cortez. After the trustee moved to confirm the an objection to the sale, and there was a hearing on October 1st after the trustee filed a reply and the court confirmed the sale. As stated in our brief, there's numerous reasons why this court should affirm the decision of the trial court. But you know, it really just boils down to Mr. Cortez sat on his rights and didn't, he didn't attempt to raise defenses in a element of law that results in a waiver. You know, bad things happen to people who sit on their rights. Statutes of limitations pass. Foreclosure plaintiffs might file motions to confirm sale. You know, things happen to people who don't make the right arguments. Things happen to people who don't timely make arguments. And that's what happened here. So as laid out in our brief, you know, there's three main reasons why the court should be confirmed in regards to his decision from this affirmed in regards to his decision confirming the judicial sale. And first and foremost is the lack of a bystanders report. Counsel talks about the Bermuda's case and says it's different, but it's really not. In Bermuda's, which was decided by this panel, the court ultimately held that there was no record or proceeding or bystanders reports providing the appeal. And the court has to presume when there's no, when there's no bystander report or record of proceeding that the trial court acted appropriately. And it ultimately affirmed the trial court on that basis alone. The standard here is abuse of discretion. The court has to find that the trial courts acted arbitrarily, misapplied the law or acted unreasonably. And it's impossible to do that when there's no record on appeal. Cortez suggests in his reply that the standard might be something less. He says to Banco Popular v. Gizinski, for the proposition, I'm supplementing the record on appeal. The Gizinski case actually, though, while it contains that statement in dicta, what it actually says is that the plaintiff complained that the record was incomplete, but the order that the plaintiff said was missing was actually in the record and cited to the record that the court had a copy of the report of proceedings and that the court had a copy of the order entered. And then as an aside, the court suggested that the plaintiff should have supplemented the record if there was something else missing. Here, there's clearly something missing. We don't have a report of proceedings. We don't know what happened at that hearing. Was Cortez there? He might have been. There was a letter that was filed with the court on that day. They hadn't written a letter from Cortez. Did the court hear any testimony from Cortez? I don't know. I wasn't there. There's nothing in the record indicating whether or not that happened. What was the basis of the court's decision? We don't know. We really have nothing here to decide whether or not the court abused its discretion. Further, Your Honors, the arguments made by Cortez don't even implicate 1508. Mr. Chaya and I both agree that the question under 1508-B-4 is whether or not the lender prevented the borrower from saving his property. But that's actually pretty limited. The Supreme Court cites to, in the McCluskey decision, it cites to Espinosa, commercial credit loan v. Espinosa, and I think Fleet Mortgage Company Corporation v. Diehl. In both of those cases, the question went to events occurring right around the sale. In Espinosa, the borrower was attempting to redeem and she was unable to redeem because of bad information given to her by the lender. In Fleet Mortgage Company Corporation v. Diehl, the sale was inadvertently held after being canceled because of a clerical error. Here, what we have is months before the sale, the borrower was allegedly on a trial period plan and making payments and that stopped. And that stopped and the payment was returned, at least according to the borrower, at least two months before the plaintiff ultimately moved to confirm the sale. We don't have an issue here where the interest is in the property. What we have here is an instance where Cortez was given notice of the sale. He was no longer on any sort of, he was no longer making payments under any sort of trial period plan. He knew of the sale. At the very least, he was able to file a motion to vacate the sale one day after the sale occurred. And he didn't bring his arguments until the end of July when the sale was in the early to mid-June. He waited. He sat on his rights. That doesn't implicate 1508B. There's no showing here that the notice wasn't provided. There's no showing that the terms of the sale were unconscionable or the sale was conducted fraudulently or that justice wasn't otherwise done because there's nothing in the record showing that the, and there's no argument actually, that the trustee prevented him from saving his interest in the property. The argument here is that Cortez was on a trial period plan and didn't receive a notice. And then finally, even if this didn't implicate 1508B, there's still the issue of the lack of evidence. Cortez filed a response and there's no affidavit attached. And there's various documents. This is Bermuda's all over again where the court noted that the borrower had multiple opportunities. Maybe here there's only one opportunity, but in Bermuda's, multiple opportunities to authenticate the documents and didn't do so. And so effectively, there were no documents for the court. Now in his reply, Cortez suggests that the proof of payments that he provides are self-authenticating, second to rule 9029 of the rules of evidence. I don't see any Illinois cases discussing that rule, but Miller's Federal Practice and Procedure does discuss it. And rule 9029 allows that commercial paper signature on it and related documents to the extent allowed by general commercial law are self-authenticating. And right in Miller's Federal Practice and Procedure explains that that's referring to generally negotiable instruments such as checks and promissory notes under the UCC and related documents. We're way afar from that right here. We're talking about from what I can see, it looks like Cortez might've gone into a computer and pulled up statements from a bank account and hit control P. That's pretty far from the commercial paper allowed to be self-authenticating in rule 9029. So there was no evidence. And admittedly, the trustee's response also contained documents, which didn't have any to confirm the sale, unless one of the four elements of 1608B is shown. The language is mandatory. So in the absence of any evidence, confirmation actually was necessary. Cortez discussed this at one point in, I think his initial brief, that there was a general issue material fact between the parties regarding what happened. If we were in a different situation and one party was moving for summary judgment, that's an appropriate argument. There's a general issue material fact, there's competing evidence or lack of evidence. That's appropriate. But here, where there just simply was no evidence, there was no basis for an evidentiary hearing and none was requested, but there was just no basis to even set one because none of the parties presented any evidence showing why the sale shouldn't be confirmed. And finally, this goes into the waiver argument too. So in his alternative argument, Cortez asked for the surplus amount to be adjusted. Well, the court might be able to get past the waiver, but there was a waiver, if there was actually evidence for the court to consider. And in his reply, Cortez cites to a case regarding, from the U.S. Supreme Court, regarding waiver. But in that case, and I'm missing the name right now, the Supreme Court discussed waiver in the sense of, we can get around the waiver issue because we can take judicial notice of these facts, and then the Supreme Court gets around it. Here, the court can't take judicial notice that Cortez made payments, and Cortez didn't provide evidence, admissible evidence, that he made payments. He just says he made payments. And so under these facts, there's no basis to even get around the waiver. Further, it would reward Cortez for the long line of assert his rights, failing to make arguments in lower court, failing to take actions, which is endemic throughout this case. So for all those reasons, I would request that the courts affirm the lower courts completely without altering the order of proven sale. Thank you. Let me ask you this question. What do we do about your client's conduct in taking this money every month? Well, your honor, there's nothing in the record regarding that, I would argue. Well, I mean, you know whether they took money or they didn't take money. I mean, are you denying that they took money? No, but there's nothing in the record regarding those funds. I mean, we should have blind eyes to the conduct of somebody in the same person. I mean, is this what a judge should do? Is this what you would do if you were a judge? I think I heard what you said, your honor, but you did break up for a second. I apologize. You could repeat that question. I apologize. All right, you're not answering the question. He wanted to know if we should just turn a blind eye to the fact that there is an allegation that your client received funds after the notice of sale. So, if there is a question, shouldn't there be a hearing to determine whether there were funds given or whether those funds need to be returned to the dependent? No, it's not turning a blind eye, your honor. The issue here is this is a standard issue in litigation where if someone doesn't make an argument and then on appeal they realize I need to or they didn't present evidence, admissible evidence, and then on appeal they say, oh, I needed to do so, you know, they're often barred. In many other situations, there could be cases where a person forgets to say something, doesn't make an argument, or doesn't present evidence, and then they can't bring it up later. And it's not the court's taking a blind eye. The court's just applying the law. So, for example, the known standard on motion to reconsider is newly discovered evidence not previously available. So, in a motion to reconsider, if someone says, ah, but there's all this evidence, there's all this evidence, but if it was already known to that party, yes, the court's under the known standards and the law isn't supposed to allow that evidence in. And so, we're basically in a similar situation here where Cortez didn't present admissible evidence. He didn't present evidence. So, the defendant made seven monthly mortgage payments in the amount of $1,400 from September 2017 through May 2018. The judgment of foreclosure accounts for amounts due through March 19, 2018. But the payments that he made after that, which are three payments, are not accounted for in a judgment of foreclosure, nor is there an affidavit, as counsel mentioned in his arguments. So, getting back to Justice Gordon's question, is that why this gentleman made payments, why isn't that being accounted for? It's not a fact that he waived his rights. This is clearly set out in the record that we have, which is limited, all right, that there were payments that were made that do not seem to be credited or accounted for in the judgment of foreclosure and then also in the order of proving sale. For the judgment of... Let me break that down to two. For the judgment of foreclosure, Your Honor, I don't know that... March 15, he made a payment on April and he made a payment in May that doesn't appear to be accounted for. For the judgment of foreclosure, Your Honor, I don't think we can say whether or not it's isn't in the record on appeal. And that was Cortez's responsibility to include that in the record on appeal. Wait, the affidavit attached to the judgment of foreclosure? That's not the defendant's responsibility, that's the plaintiff's responsibility. Well, if there's a suggestion that the plaintiff didn't include an affidavit to obtain the judgment of foreclosure, I don't think there's any evidence that the plaintiff didn't do so. The court entered a judgment. This court should presume there was an affidavit because how else would the court have entered a judgment? Why should we presume? The record's supposed to be provided. And if it was entered at the trial level, then that should be part of the record. I agree it should be part of the record, Your Honor. The issue here is, it's not the appellee, it's the appellant who's required to provide a complete record to the court. All right. Well, then what about the amounts included in the order of proven sale? I mean, there's a total of other advances at $10,542.62. Other advances, does that include the property tax or what is that? I don't know what the other advances are, Your Honor. Again, that isn't an issue that was even raised at all in the lower courts. So you don't know what these other advances are? Staying here today, I do not know what the other advances are, Your Honor. Okay. All right. And then I have a question here. You argued that 1508B-4 is inapplicable, all right. But given the fact that the plaintiff here was aware that the gentleman was entering into a mortgage modification agreement, all right, and his first payment was supposed to be in December, and it appears from all parts of the record that there wasn't any contest with regards to him making his payments, which he made payments to get into the final modification agreement. So given the fact that this is taking place and the plaintiff is still trying to pursue an order of proving sale and trying to send this to a judicial sale, doesn't that fall under the not being done here? No, Your Honor. And the reason- If he's trying to enter into an agreement, why are you still trying to sell the property on him? The reason is, Your Honor, is assuming all the facts in Cortez's response are true, which are in score by affidavit, assuming that's all true, everything was over under his allegations a month before, at least a month before the sale occurred. This isn't a case of dual-tracking. I would agree with Your Honor that if the trustee, for example, had put him on a trial period plan in April 2019, and then he made a payment in May, and then the trustee knows for sale, and then he made a payment in June, and then there was a sale, and then he made a payment in July, there would be serious concerns there, not to mention, obviously, dual-tracking concerns, but under 1508B4. And here, the trial period plan he attaches to his response had payments in December, January, and February. And then he alleges he made two more payments in March and April, and then a payment in May that was rejected. By the time the sale a trial period plan, or that he was making payments, or that he thought that at that point in time that he was due a modification. In fact, he knew that there had been a rejected payment. And he knew that he didn't, he doesn't allege that he received a permit modification. He could have, for example, come in and he had attorneys, you know, Mr. Chai has his third attorney that he's had in this case. He could have either pro se or through his attorneys filed a motion to stay the sale again, which he'd already done before saying, I'm waiting for a permit modification. That's what was going on. He could have filed a motion to vacate the judgment, dismiss the case saying, I complied with the trial period plan. I'm no longer in default because they're required to modify my loan. These are all things that Cortez could have done that he didn't do. And again, it goes down to the issue of when parties don't timely act on their rights, then those rights can be waived. And that is what happened here. I don't have questions at this time. Just briefly, your honors, I'm going to do something unusual here and I'm going to cite to my mother-in-law for my final words. She always tells me what's right is right. And what's wrong is wrong. And I think that couldn't ring truer than in this case. What happened here to Mr. Cortez was wrong. I trust that this court will do the right thing. I thank you, your honors, for your time and for taking our arguments with Zoom and everything else that's going on. So that's all I have to say unless there's any other questions. Okay. Well, thank you very much. Give us an interesting case here and you'll have an order or an opinion really short. Thank you, your honors. The court will be adjourned.